## BURGER, BY HIS NEXT FRIEND, v. FRAKES.

1. **Guardian:** EXTENT OF AUTHORITY UNDER GENERAL APPOINTMENT. One who is appointed guardian of a minor in general,—that is, without any limitation of his authority, is charged with the care and custody of the person, as well as of the property, of his ward.

2. **Adoption:** OF CHILD UNDER GUARDIANSHIP. Where a guardian of the person and property of a minor child has been duly appointed, such child cannot be adopted by a third party without the guardian's consent. Whether it could be done with such consent, *quaere*.

3. **Parent and Child:** POWER OF PARENT TO MAKE ORAL GIFT OF CHILD TO ANOTHER. The law does not confer upon a parent the power to make a mere oral gift of his minor child to another; and the donee in such a case cannot recover the child from its duly appointed guardian.

4. ———: ADOPTION: INHERITANCE. Whether parents by adoption inherit from their adopted child the same as natural parents from a natural child, is a question not decided in this case.

*Appeal from an order made by Hon. H. C. Traverse, Judge of the Circuit Court of the Second Judicial District.*

FRIDAY, DECEMBER 10.

THIS is a proceeding by *habeas corpus* to determine the claims of the parties to the custody of the minor plaintiff. Upon the hearing, the circuit judge held that defendant was in law entitled to the custody of the minor, and so ordered. The order was made of record in the circuit court of Davis county. Plaintiff, the guardian and next friend of the minor, appeals.

*Payne & Eichelberger* and *Jones & Steele,* for appellant.

*S. S. Carruthers,* for appellee.

BECK, CH. J.—I.   Aaron Burger, whom we shall designate as plaintiff, is the paternal grandfather of the minor, a

a child four or five years old, whose custody is in controversy in this suit, and defendant is his maternal grandfather. The plaintiff was appointed guardian of the minor by the proper court. He claims in this action custody of the minor as the guardian of his person and property. Defendant claims the custody of the child under an act of adoption, made subsequent to the appointment of plaintiff as guardian, and without his consent, and upon the further ground that the mother who survived the father, before her death, gave the child to him.

The plaintiff disputes the validity of the act of adoption, and denies both the fact and validity of the gift of the child by the mother. Defendant contends that plaintiff is not the guardian of the person of the minor, claiming that his guardianship extends only to the property of the ward. This statement of the issues indicates the leading and decisive questions in the case, which are these: (1) Is the plaintiff the guardian of the person of the child? (2) Is the act of adoption valid and effective to confer upon defendant the right to the custody of the child? (3) Was there a valid gift of the child which confers upon defendant the right to its custody? There are other questions discussed by counsel, but they are subordinate and collateral. They will be hereafter stated, so far as it may be necssary to consider them in this opinion. We will proceed to the consideration of the questions we have above stated.

II. Is the plaintiff the guardian of the person of the child? The petition upon which the appointment of plaint-1. GUARDIAN: iff was made prays that he be appointed guardian, extent of authority under without specifying the powers that shall be congeneral appointment. ferred upon him. The record of the appointment, the letters of guardianship and the guardian's bond are in the same general language, and do not prescribe his duties and powers. In the oath of qualification he undertakes to discharge the duties of guardian of the person and property of the minor. It must be conceded that plaintiff was

appointed as the guardian generally, without words of limitation or qualification. It cannot be doubted that a guardian so appointed, in the absence of a statute to the contrary, would be charged with the duties of a guardian of the person and property of the ward. The term "guardian," without words of limitation, describes one who is charged with the care and custody of the property and person of the ward. See Schouler, Dom. Rel., 436. Our statute does not provide for the appointment of a guardian whose powers shall be limited to the care of the ward's property, except in one case, viz., where the minor has property not derived from either parent. Code, § 2243. It is true that sections 2246 and 2250 prescribe that the guardian of the property of a minor shall give bond and must prosecute and defend actions for his ward. But, by the use of the term "guardian of the property," the sections are aptly applied to guardians generally, who have the care of the property and person of the ward, and to the single case of a guardian for the property only, contemplated in section 2243. The occurrence of the expression does not support the position that the general term "guardian" does not describe guardians who are charged with the custody of both the person and property of the ward. Section 2249 prescribes the power and authority of guardians of the persons of minors. This provision gives no support to the position that the statute provides for the appointment of guardians with authority limited to the property of the ward, except in the case contemplated in section 2243. The word "guardian" is obviously used in the statute as a general term, and applies to both guardians of the property and guardians of the persons of the ward.

It is not necessary to determine whether a minor may have two guardians, one of his person and the other of his property, as we hold that the plaintiff, being appointed guardian without limitation upon his power and authority, must be regarded as the guardian of the person and estate of the ward. It would appear probable that the law does not con-

template an appointment in any case of two guardians. Code, § 2243, which provides for the appointment of a guardian of the property of a minor, doubtless contemplates that the parents should retain the care, custody and control of his person. It appears, too, that the appointment of two guardians would not operate to the advantage of the ward. The guardian having control of his person ought to determine as to his education and other matters involving the expenditures from the income and avails of his estate. If there should be a guardian of the property of the minor, he could impede or arrest the lawful acts of the other guardian pertaining to these matters. Disagreements and conflicts might arise in this way, which would be to the detriment of the ward.

III. The defendant made application, by petition, to the circuit court to be appointed guardian of the person of the minor. The clerk, in vacation, entered an order appointing defendant such guardian, but the court, in term, set the order aside. Defendant does not and cannot claim that the appointment is in force, or that under it he can claim to exercise any of the powers or duties of a guardian. The plaintiff insists that the proceeding, wherein the clerk appointed the defendant guardian, and the order of the court setting it aside, operate as an adjudication of the questions involving the power of the court to appoint a second guardian, and of the authority of the plaintiff to act as the guardian of the person of the minor. We waive the consideration of this question, as its determination becomes unnecessary in view of the conclusion we reach, that plaintiff is, by virtue of his appointment, the guardian of both the person and estate of the minor.

IV. We come to the consideration of the second question involved in the case, viz.: Is the act of adoption valid and 2. ADOPTION: effective to confer upon the defendant the right of child under guardianship. to the custody of the child? Code, §§ 2307–2311, provides for the adoption of children. Section 2307 prescribes that persons competent to make a will are author-

ized to adopt the minor child of another, thereby confering upon him "all the rights, privileges and responsibilities which would pertain to the child if born to the parents adopting in lawful wedlock." The other sections, excepting 2311, are in the following language:

"SEC. 2308. In order thereto, the consent of both parents, if living, and not divorced or separated, and if divorced or separated, or if unmarried, the consent of the parent having the care and providing for the wants of the child, or, if either parent is dead, then the consent of the survivor, or if both parents be dead, or the child shall have been or remain abandoned by them, then the consent of the mayor of the city where the child is living, or if not in a city, then of the clerk of the circuit court of the county where the child is living, —shall be given to such adoption, by an instrument in writing, signed by the parties or party consenting, and stating the names of the parents, if known, the name of the child, if known, the name of the person adopting such child, and the residence of all, if known, and declaring the name by which the child is thereafter to be called and known, and stating, also, that such child is given to the person adopting for the purpose of adoption as his own child.

"SEC. 2309. Such instrument in writing shall be also signed by the person adopting, and shall be acknowledged by all the parties thereto, in the same manner as deeds affecting real estate are required to be acknowledged; and shall be recorded in the recorder's office in the county where the person adopting resides, and shall be indexed with the name of the parents by adoption as grantors, and the child as grantee, in its original name, if stated in the instrument.

"SEC. 2310. Upon the execution, acknowledgment and filing of record of such instrument, the rights, duties and relations between the parent and child by adoption shall thereafter, in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth."

It will be observed that in these sections no mention of or reference to a guardian is made, if the child have one. It is not provided that by adoption a guardian may be robbed of his authority and relieved of his duties toward his ward. If these sections are held to have such effect, it must be done by construction of their language. Such a construction, practically, would have the effect to remove a guardian; to take from him the care and custody of his ward, and leave him, while still guardian, without authority, power or duties. The statutes declare that "guardians of the persons of minors have the same power and control over them that parents would have if living." The authority and power of parents are those of natural guardians having the care and custody of their minor children. Code, § 2241. Now, the construction of Code, §§ 2307–2311, contended for by counsel for defendant, giving these provisions the effect which authorizes an act of adoption without the consent and concurrence of the guardian, would operate to annul the authority and power of guardians over the persons of the wards. This, too, would be done without notice to them, by proceedings of which they could not be informed,—proceedings, too, that are not judicial in their character, and rest upon the assent of the person making the adoption, and a mere clerk who is not required to determine facts and exercise discretion thereon. And this construction gives to mere stangers the power of disposing of the custody of the minor, directing the course of descent of his property, robbing him of his father's name, and giving him a new name, all without the knowledge or assent of his guardian, whom the law has appointed to hold custody of his person, to look after his welfare, and to guard all his interests, and who stands in the place of a father to him. The result of the interpretation seems to us, absurd. Certain is it that it would be subject to most gross, abuse, and would in many cases result in great injustice.

The appointment of a guardian is a judicial act made with a view to the qualification of the person appointed, upon the

determination of the court that the interest and welfare of
the ward will be promoted thereby.   If the statute be inter-
preted as contended for by defendant, an unfit and design-
ing man, who aims to become the heir of the minor possess-
ing large property, may, by procuring the assent of the clerk
of the court, or the mayor of the city, accomplish his pur-
pose without the knowledge or assent of the guardian, to
whom, by a judicial decision, the care and protection of the
minor was committed.   We will not further point out the
abuses and injustice which might result under the sanction
of the statute as interpreted by defendant.

This case illustrates the improper use to which the statute
would be put.   Defendant, it appears from the record, being
dissatisfied with plaintiff's guardianship, made an attempt to
supersede him by securing for himself the appointment as
guardian of the person of the minor.   But the order of the
clerk making the appointment he coveted was set aside, and
defendant was defeated in his attempt to gain his object in
that way.   It is probable that defendant anticipated this
result.   About ten days before the order was set aside, the
same clerk who had appointed him guardian assented to and
executed the act of adoption.   This same clerk had issued the
letter of guardianship to plaintiff, and of course well knew
the conflict between the grandfathers for the custody of the
child, and must have known that there were questions of
right and law dividing them.   Yet he solves all these, as he
supposed, by assenting to the act of adoption; and we may
well believe, as the law requires him to exercise no discretion
upon the facts of the case, without any inquiry, whether the
adoption would be just towards the minor sister, (for it
appears that he had one,) in substituting his grandparents
for her as the minor's heir in case of his death, and whether
the best interests of the minor himself would be promoted.
We discover by the history of the case what a clerk or mayor
might do.   His action would not be subject to review in any
form, except probably for fraud in an action in chancery to

set aside the act of adoption. But less determination and skill than is exhibited ordinarily to support frauds would conceal the motives and improper practice in such cases.

The contrary interpretation, to the effect that the act of adoption cannot be made when a minor has a guardian, excepting by his consent, or that it cannot be made at all in such a case, is, in our opinion, in harmony with justice and the good of minors. We may here say that we do not decide the question whether a minor having a guardian may be adopted at all. This question we reserve. But we are clearly of the opinion, and do decide, that if in such a case an act of adoption may be made at all, it must be with the assent of the guardian.

It will be observed that the provisions of the Code pertaining to adoption and guardianship of minors all relate to the same subjects; the control, care and custody of minors who have no parents living. They are therefore *in pari materia*, and should be so construed as to harmonize in all their parts; and, as in the case of all other statutes, that construction will be adopted which will give force and effect to all their provisions. The construction insisted on by defendant's counsel, while based upon the language of the provisions touching adoption, would give effect thereto, broader than that language, and would, to some extent and in some cases, nullify the Code, § 2249, and other sections pertaining to the appointment of guardians. As we interpret these statutes, Code, §§ 2307–2311 are operative in the case of minors not having guardians. Section 2249 and other sections maintain guardians in the exercise of their authority until they have been removed by proper proceedings, or their wards become of age. This force and effect, in harmony with the language, is given to all these provisions.

V. The third question in the case is this: Was there a a valid gift of the child which confers upon defendant the

3 PARENT
and child :
power of par-
ent to make
oral gift of
child to an-
other.

right to its custody?    The gift upon which defendant's claim is based was oral, and made a short time before the death of the mother of the minor.    It is sufficient to say that the law prescribes that a parent may provide by will for the care and custody of a minor child, and, as we have seen, may make disposition of it by assenting to an act of adoption.    But we know no law that will authorize us to enforce a mere oral gift of a child made by a parent.

VI.   The respective grandfathers of the child seem to have equal affection for it, and to be equally capable of bestowing upon it care and protection.   We are not prepared to determine that its welfare would be promoted more by assigning it to the care of one than to the other.   We think the defendant's zeal to retain the child has led him into the error of pursuing the course of adopting it, which, if successful, would affect the rights of his sister, thus subjecting him to the imputation of an act of injustice which would work to his own gain.   But we doubt not that he was prompted by no such purpose and motive.   Regarding, as we do, that each grandparent would give the child proper care, there is no ground for holding that the judge of the circuit court should have awarded the custody to defendant for the reason that the minor's welfare demanded such an order.   The questions in the case are based upon the legal rights of the parties. The tender years of the child are such that it has formed no attachment to the defendant, the severing of which would wound its affections and sensibilities.   Doubtless each grandparent would feel equally grieved by being deprived of the custody of his grandchild.   It follows that there is no controling question of love or affection in the case.

The foregoing discussion disposes of questions which are decisive of the case.   Others need not be considered.   The order of the circuit judge is

REVERSED.

SUPPLEMENTAL OPINION.

BECK, CH. J.—I. A petition for rehearing filed in this case demands attention as to some of the positions and arguments presented therein. It is complained that the foregoing opinion erroneously states that the ward of the plaintiff, in whose name this action is prosecuted, has a sister. This statement, it is true, is not sustained by the record, and the fact was erroneously inferred or stated upon a mistaken understanding of the abstract. But this error of fact in no measure affects the argument based upon it, While the child has no sister, it is true that he has other kin, who, in case of his death, would inherit his property, and if his foster parents became his heirs these relatives would suffer the injustice which the opinion shows would be done to the sister, which it assumes the child had. The argument we base upon the supposed existence of a sister is just as well supported upon the actual existence of the paternal grandfather, or other person, who, upon the child's death, would become its heir. While we regret the error of fact into which we fell, we are well satisfied that the force of the argument of the opinion is in no way affected by it.

II. Counsel for both parties in their arguments submitted upon the trial of the cause in this court concurred in the conclusion that, upon the adoption of a child in accord with the requirements of the statute, its foster parents become its heirs at its death. In other words, the rules of inheritance under the statute recognize the adopted child as though it were the offspring of the foster parents, to and through whom, in case of its death, its property would descend just as though it were their natural child. Counsel for defendant in the petition for rehearing, frankly admitting that this was his view of the law, now insists, having discovered his mistake, that this is an erroneous position, and that the course of descent from the adopted child is, under our statute, the same as though there had

**4. PARENT and child: adoption: inheritance.**

been no adoption. We assumed in the foregoing opinion that the view of the law in which counsel for both parties concurred is correct; and, without considering or discussing the question, used language which expresses that doctrine. We are glad of an opportunity to modify and explain our language, and to state explicitly that we are not to be understood as deciding or expressing in the form of *dictum* that foster parents will inherit from adopted children under the rules of inheritance directing the descent of property of children to and through their natural parents. The question must be regarded as not having been decided or considered in the case,—it is left just as we found it. But this modification of the foregoing opinion, and concession to the views of defendant's counsel, has no effect whatever upon the argument against the validity of the act of adoption of plaintiff's ward by the defendant, based upon injustice to the kin of the child who would be cut off from the right to inherit its property. While such kin may not be defeated of rights as heirs, they may be defeated of other rights, both natural and legal, by an act of adoption of the character of the one in question; among which are the right to the custody and society of the child, and the right to direct its education and moral culture. These rights, the exercise of which would establish the character of the child and direct its mental and moral development, would be regarded as of far greater value than lands and goods by many whose affection and pride are concentered in their kin.

III. Counsel for defendant urge many arguments in support of the position that defendant is entitled to the custody of the child for the reason that he has stronger affection for it than the plaintiff possesses, and, for this reason, is better qualified to direct its education and domestic and moral training. We need not pursue the inquiry to which we are thus invited. A court of competent jurisdiction has appointed plaintiff the guardian of the child. The plaintiff, as guardian, is entitled to the custody of his ward; and it is not com-

petent for a judge or court in a *habeas corpus* case to review the proceedings resulting in the appointment of plaintiff, nor to inquire whether he should be, in any manner, relieved of the duties and rights of a guardian, and whether the custody of the child should be given to another more capable or better fitted to receive it.

Other positions taken, and arguments in their support advanced by defendant's counsel, do not demand further consideration. We think that the doctrines we announced in the foregoing opinion demand no further discussion. The petition for rehearing is overruled.

REVERSED.